UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| Linda Ortega, | ) | |
|---|---|---|
| | ) | No. 11 C 8477 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| Chicago Public Schools of | ) | |
| the Board of Education of | ) | |
| the City of Chicago and | ) | |
| Adelfio Garcia, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This is a discrimination case brought under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.,* by Plaintiff Linda Ortega against her former employer, the Chicago Board of Education (the "Board")[1] and the principal of the school where Plaintiff worked, Adelfio Garcia ("Principal Garcia"). Defendants moved for summary judgment on November 18, 2013, and the Court entered a Memorandum Opinion and Order on that motion on June 30, 2015. R. 109 ("Order"). The Order granted in part and denied in part Defendants' motion as follows: (1) Plaintiff's individual claims against Principal Garcia were dismissed; (2) summary judgment in favor of the Board was granted on Plaintiff's failure to accommodate claim; and (3) summary judgment in favor of the Board was denied on Plaintiff's disparate treatment and retaliation claims. The Board now moves for

---

[1] The Court will refer to this Defendant by its more common name rather than the name used by Plaintiff in the caption. *See* R.109 at 1 n.1.

reconsideration of the portion of the Court's ruling denying summary judgment on Plaintiff's retaliation claim. R.11. For the following reasons, the Board's motion is denied.

The Court has "inherent authority" under Rule 54(b) to reconsider its interlocutory orders. *Janusz v. City of Chi.,* 2015 WL 269934, at *4 (N.D. Ill. Jan. 20, 2015); Fed. R. Civ. P. 54(b) (Non-final orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). A motion to reconsider is not, however, a proper vehicle for rehashing arguments that the Court previously rejected. *Midwest Trading Group, Inc. v. GlobalTranz Enters., Inc.*, 2015 WL 1043554, at *3 (N.D. Ill. Mar. 5, 2015); *Janusz,* 2015 WL 269934, at *4. "'Rather, a motion to reconsider allows a party to direct the court's attention to manifest errors of fact or law, a significant change in the law or facts, the court's misunderstanding of a party's argument, or a party's contention that the court ruled on an issue that was not properly before it.'" *Midwest Trading Group, Inc.,* 2015 WL 1043554, at *3 (quoting *Janusz*).

The Board argues the Court misapplied the law to the facts when it denied summary judgment to the Board on Plaintiff's retaliation claim. The Court's ruling on the retaliation claim was as follows:

> The Court finds that through evidence of more favorable treatment with regard to endorsements of similarly situated teachers Patricia Nagy and Justina Suh together with the temporal proximity of Ortega's May 2009 ADA complaint and June 2009 placement to the reassigned teachers pool, Ortega has presented sufficient evidence from which a reasonable jury could find that Defendant

2

> took an adverse action against her because she engaged in protected activity.

R. 109 at 50 (*Ortega v. Chic. Pub. Sch. of the Bd. of Educ. of the City of Chic.*, 2015 WL 4036016, at *21 (N.D. Ill. June 30, 2015)).

The Board does not challenge the Court's reliance on the evidence of similarly situated teachers who received more favorable treatment than Plaintiff. Instead, the Board's argument is that, as a matter of law, Plaintiff cannot establish the causation element of her retaliation claim because Plaintiff gave Defendants notice she was filing an ADA complaint *after* Principal Garcia already had made the decision to change the applicable policies that led to Plaintiff being placed in the reassigned teachers pool. The Board relies on Principal Garcia's affidavit, submitted by the Board in support of its summary judgment motion, in which he states that, in February 2009, he "beg[a]n making decisions" to redefine approximately twelve teaching positions to require a bilingual endorsement for the 2009-10 school year, and that "[o]ne of those positions was Plaintiff's." R. 76 at 3 (¶ 13). Plaintiff did not contest this evidence. The Board argues that, given the undisputed fact that the decision to impose a bilingual endorsement for the 2009-10 school year was made by Principal Garcia in February 2009, no rationale factfinder could find that the Board's June 2009 action transferring Plaintiff to the reassigned teachers pool was caused by Plaintiff's May 2009 exercise of her statutorily protected rights.

As an initial matter, the Court observes that the Board's emphasis on Plaintiff's failure to dispute Principal Garcia's statement in his affidavit that he made the policy change decision in February 2009 is somewhat off-base. An

3

employer in a retaliation case should not be able to obtain summary judgment by relying solely on the testimony of the plaintiff's supervisor that he (the supervisor) already had made up his mind to take an adverse employment action prior to the time that the plaintiff exercised her rights to engage in protected activity. It would be almost impossible for a plaintiff to disprove a "fact" that exists only in the mind of the supervisor. For summary judgment in the employer's favor to be proper, there needs to be something more in the record demonstrating "the decision had already been made" besides the decision-maker's uncorroborated testimony.

But that issue is not before the Court because it is undisputed here that Principal Garcia's decision to adopt the policy change occurred in February 2009, and what's more, that the policy change was not a secret and was made known to the teachers, including Plaintiff, well before Plaintiff engaged in the protected activity of filing a discrimination complaint. Nevertheless, the date on which Principal Garcia made the decision to change the bilingual requirements policy is not dispositive in this case because Plaintiff does not claim discrimination based on the decision to adopt the new policy so much as she claims discrimination in the decision regarding how that policy was applied to her.

"When a retaliation claim is based on suspicious timing, the order of events is even more important than the time between them; the theory doesn't work if the retaliatory act precedes the protected activity." *Leitgen v. Franciscan Skemp Healthcare,* 630 F.3d 668, 676 (7th Cir. 2011). As the Court previously held, the adverse employment decision at issue is the Plaintiff's transfer to the reassigned

teachers pool, which ultimately resulted in the loss of her job. Plaintiff was transferred to the reassigned teachers pool in June 2009. R. 109 at 16 (*Ortega,* 2015 WL 4036016, at *7). The Board does not contest the Court's finding that "[t]here is no question that Ortega engaged in protected activity in May 2009, and that Defendant was aware of that activity." R. 109 at 47 (*Ortega,* 2015 WL 4036016, at *20). Thus, the adverse employment action was not taken until after Plaintiff exercised her right to engage in statutorily protected activity. A temporal analysis of the causation issue, therefore, does not appear to preclude a finding of causation.

Nevertheless, the Board points to the Seventh Circuit's decision in *Leitgen* to argue that the temporal analysis should focus on when the adverse decision was made, not on when it was implemented. In *Leitgen*, the plaintiff alleged she was terminated after complaining about alleged discriminatory policies of her employer regarding compensation issues. *Leitgen,* 630 F.3d at 676. While the plaintiff was not actually terminated until after she had engaged in the protected activity, the Seventh Circuit held that the evidence was "conclusive that [the plaintiff's supervisors] had decided to consider various disciplinary responses to [her] disruptive behavior well before she engaged in the allegedly protected conduct . . . ." *Id.*

*Leitgen* is distinguishable because there the plaintiff's claim was that the termination decision itself was retaliatory rather than the implementation of that decision. In this case, Plaintiff targets as being retaliatory the implementation of the policy change decision. While the record establishes that the implementation

5

decision was announced in June 2009, it is ambiguous regarding when the decision about how to implement the new policy was made. The record shows a series of events, namely: (1) a policy-change decision announcing new bilingual requirements; (2) followed by an implementation decision apparently in the form of Principal Garcia's identification of which teaching positions were affected by the new policy and transmittal of that information to the Board; (3) followed by a final implementation action taken by the Board announcing Plaintiff's transfer to the reassigned teachers pool as a result of the policy change. It is undisputed that the first event took place in February 2009 and the last event occurred in June 2009. But the record does not establish when and under what circumstances the second event took place.

The unstated assumption in the Board's argument is that the third event was predetermined by, or a foregone conclusion of, the first event, so that the second event is not relevant. But the Board does not point to evidence establishing that to be the case. Moreover, there is evidence in the record to suggest otherwise. For instance, there is testimony that the impact of the new policy on teaching positions for the next school year depended on a complex analysis of seniority, certifications, and endorsements of all employees. There also is evidence that two teachers who were not reassigned pursuant to the policy were similarly situated to Plaintiff with respect to the requirements of the new policy. *See* R. 109 at 39-41 (*Ortega,* 2015 WL 4036016, at *16-17). Based on this evidence, a reasonable jury would not be foreclosed from concluding that Principal Garcia or the Board applied the complex

analysis used by them to determine the impact of the new policy on teaching positions for the 2009-10 school year in a retaliatory manner insofar as Plaintiff was concerned.

The Board also argues that Plaintiff knew well before she was formally transferred to the reassigned teachers pool that the new policies affected her. Since Plaintiff was not the decision-maker, it is not clear what the relevance would be of her knowledge. Perhaps the argument is that a reasonable fact-finder could infer support from Plaintiff's knowledge for the Board's position that Plaintiff's status as a reassigned teacher, though not formally announced until June 2009, was nevertheless established at the moment Principal Garcia adopted the new policy. But a reasonable fact-finder also might infer from this evidence only that Plaintiff recognized she did not meet the requirements of the new policy and therefore knew her job was at risk. A reasonable fact-finder also might conclude that, even though Plaintiff thought her reassignment was inevitable at the moment the new policy was announced, she was mistaken.[2] Thus, evidence of Plaintiff's knowledge does not establish the Board's right to summary judgment. The record does not show at what point Plaintiff's reassignment pursuant to the new policy became fixed, which raises

---

[2] There are various reasons why Plaintiff might have been mistaken about her reassignment being fixed at the moment the new policy was announced (if that is in fact what she thought). For example, further refinement of the policy or unresolved issues concerning its application could have resulted in Plaintiff retaining her current teaching position. Or else Plaintiff might have been able to avoid being reassigned by taking some action prior to the start of the next school year. It is irrelevant that, ultimately, neither of these things happened. The point is that a reasonable fact-finder could conclude that the impact of the new policy on Plaintiff's employment status was not fixed at this point in time.

the possibility that it did not become fixed until after Plaintiff exercised her protected rights. Therefore, the Court reaffirms its conclusion that the circumstances of, and the date on which, Principal Garcia made his recommendations to the Board regarding which teachers were affected by the new policy, as well as the date on which the Board acted on that recommendation, are indeed relevant to the causation issue.[3]

## Conclusion

The fact that Principal Garcia made the decision to change the bilingual policy in February 2009 fails to establish beyond reasonable dispute that the Board is entitled to summary judgment on Plaintiff's retaliation claim. Because it is not clear from the record when the decision was made to reassign Plaintiff pursuant to the new policy, a reasonable jury could conclude that the Board was motivated by retaliation when it announced Plaintiff's transfer to the reassigned teachers pool in June 2009. Accordingly, the Board's motion for reconsideration (R. 111) is denied.

ENTERED:

*Thomas M. Durkin*

Thomas M. Durkin
United States District Judge

Dated: S e p t e m b e r  1 ,  2 0 1 5

---

[3] *See* R. 109 at 49-50 (*Ortega*, 2015 WL 4036016, at \*21) ("In his affidavit, Principal Garcia states that he had to wait until mid-April/early May 2009 to submit his position redefinition recommendations to the Work Force Planning Unit, . . . and ultimately submitted seven teaching positions that required a bilingual endorsement. However, he does not state why he had to wait or provide an exact date or identify any other record evidence reflecting when he submitted those recommendations to the WFPU. In light of that, a genuine issue of material fact exists as to when he made the decision and submitted the list to the WFPU.").