UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDA ORTEGA, | ) |
| *Plaintiff,* | ) |
| | ) Case No. 11-CV-8477 |
| v. | ) |
| | ) Judge Thomas Durkin |
| CHICAGO BOARD OF EDUCATION, | ) |
| *Defendant.* | ) |

**MEMORANDUM OPINION AND ORDER**

On November 21, 2017, the Court entered a memorandum opinion and order regarding the equitable relief to which Plaintiff Linda Ortega is entitled. *See* R. 192 (*Ortega v. Chi. Bd. of Educ.*, __ F. Supp. 3d __, 2017 WL 5593350 (N.D. Ill. Nov. 21, 2017)) (hereinafter "the Equitable Relief Order"). Currently before the Court is a motion filed on December 20, 2017 by Defendant Chicago Board of Education ("the Board") for "Final Judgment Under Rule 54(b)" and "To Stay Judgment Under Rule 62." R. 207. For the reasons that follow, the Board's motion is denied, but the Final Judgment entered by the Court on November 21, 2017, R. 194, will be amended to reflect the Court's ruling herein.

**BACKGROUND**

Included in the equitable relief the Court awarded Ortega was an award of lost pension benefits in the amount of $216,716. In addition to making this award, the Court stated that it would retain jurisdiction for three months beyond the May 1, 2021 anticipated vesting date for Ortega's pension from her current employment

with the state government. Should future events lead to Ortega's state pension not vesting by that date, the Court stated that Ortega could then file a motion with the Court seeking an additional lost pension benefit award to make up for the state pension benefits she ultimately would not be receiving due to the fact that her state pension failed to vest. Although the Court did not state the amount of that additional pension benefits award in the Equitable Relief Order, its intention as to that amount should be clear from the opinion. To the extent that it is not, then the Court now clarifies that the additional amount to which Ortega would be entitled should her state pension not vest is $299,184, representing the difference between the amount of lost pension benefits to which Ortega's actuarial witness testified ($515,900) and the amount the Court already awarded in its Equitable Relief Order ($216,716). *See* Equitable Relief Order, R. 192 at 85-88 (2017 WL 5593350, at *35).

The Board filed a notice of appeal from the Final Judgment Order on December 13, 2017. *See* R. 199. On December 14, 2017, the Seventh Circuit entered an order stating that "[a] preliminary review of the short record indicates that the order and judgment appealed from may not be final and appealable within the meaning of 28 U.S.C. § 1291." *Ortega v. Chi. Bd. of Educ.*, Appeal No. 17-3542, Doc. 2. After quoting from that portion of the Court's Final Judgment in which the Court stated that it was retaining jurisdiction until sixty days past Ortega's anticipated state pension vesting date, the Seventh Circuit observed that the Board's appeal "may be premature because the amount of damages has not been fully and finally determined." *Id.* The Seventh Circuit therefore ordered that the Board "file, on or

2

before December 29, 2017, a brief memorandum stating why this appeal should not be dismissed for lack of jurisdiction," while indicating that "[a] motion for voluntary dismissal pursuant to Fed. R. App. P. 42(b) will satisfy this requirement." *Id.* The Board chose the latter option and filed a Motion to Voluntarily Dismiss Appeal. On December 18, 2017, the Seventh Circuit granted that motion, *id.,* Doc. 5-1, and remanded the case to this Court, *id.,* Doc. 5-2 and R. 205, 206.

The Board then filed the current motion. That motion seeks two forms of relief. The first is an order amending the Final Judgment to include a finding for purposes of Rule 54(b) of the Federal Rules of Civil Procedure that "there is no just reason for delay." R. 207 at 1-2. The second is an order pursuant to Rule 62(d) of the Federal Rules of Civil Procedure staying the Final Judgment without requiring the posting of bond.

## DISCUSSION

### A. RULE 54(b) CERTIFICATION

The Seventh Circuit questioned the appealability of this Court's Final Judgment based on the Court's retention of jurisdiction over the pension benefits award. Although the Board does not specifically say in its motion, presumably the Board is asking the Court to make a finding that there is no just reason to delay an appeal on the damages claims addressed in the Equitable Relief Order *other than* the lost pension benefit award on the theory that the lost pension benefit award lacks the required finality to be appealed.

3

Rule 54(b) applies to a judgment on multiple claims or involving multiple parties, and provides that

> [w]hen an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

The Seventh Circuit has said that "trial judges do not have carte blanche to certify partial dispositions for immediate appeal under Rule 54(b)," and "[t]he rule itself makes clear that a district judge may enter an appealable judgment only if it disposes of a 'claim for relief' that is 'separate' from the claims not disposed of." *Jack Walters & Sons Corp. v. Morton Bldg., Inc.*, 737 F.2d 698, 701 (7th Cir. 1984). Although the Supreme Court has not "attempt[ed] any definitive resolution of the meaning of what constitutes a claim for relief within the meaning of the Rules," it has said that "a complaint asserting only one legal right, *even if seeking multiple remedies* for the alleged violation of that right, states a single claim for relief." *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 n.4 (1976) (emphasis added); *see also Local P-171, Amalgamated Meat Cutters & Butcher Workmen of N. Am. v. Thompson Farms Co.*, 642 F.2d 1065, 1069 (7th Cir. 1981) (Rule 54(b) requires that the district court action "encompass multiple parties or multiple claims for relief, rather than a single claim resting on multiple theories *or a single claim with*

*alternative requests for relief*") (emphasis added). Thus, the Court does not have authority under Rule 54(b) to certify for appeal its Final Judgment as to all but the lost pension benefits award. As stated in Wright & Miller, 10 Fed. Prac. & Proc. Civ. § 2657, "when [a] plaintiff is suing to vindicate one legal right and alleges several elements of damage or seeks multiple remedies, only one claim is presented and subdivision (b) [of Rule 54] does not apply." *See, e.g., Reyher v. Champion Int'l Corp.*, 975 F.2d 483, 487 (8th Cir. 1992) (multiple remedies in ADEA cases do not transform a single claim of intentional age discrimination into multiple claims); *Ariz. State Carpenters Pension Tr. Fund v. Miller*, 938 F.2d 1038, 1040 (9th Cir. 1991) (when liability rests on the same transaction or series of transactions, a count for punitive damages, although of a different order than compensatory damages, does not constitute a separate claim for Rule 54(b) purposes); *Sussex Drug Prods. v. Kanasco, Ltd.*, 920 F.2d 1150, 1154 (3d Cir. 1990) ("An order that eliminates two of several elements of damages flowing from a single claim does not qualify for Rule 54(b) certification."); *Stearns v. NCR Corp.*, 195 F.R.D. 652, 654 (D. Minn. 2000) (the court's determination that the employer was liable to the employees for breach of contract was not distinct from the employees' claim for injunctive relief and restitution, and thus the court could not enter final judgment on the issue of liability before resolving the other issues).

The Board states that it has filed its motion for Rule 54(b) certification because it "wishes to appeal the 'Final Judgment' without waiting several years for finality with respect to pension benefits." R. 207 at 2 (¶ 4). The Board, however, has

assumed that the Court's Final Judgment is not immediately appealable based simply on the fact that the Seventh Circuit questioned whether it was and directed the Board *either* to address the issue by filing a short brief explaining why an immediate appeal from the Final Judgment was proper *or* to voluntarily dismiss the appeal. The Board voluntarily dismissed the appeal rather than defend the immediate appealability of the Court's Final Judgment. Presumably, the Board is of the opinion that it cannot present any arguments to the Seventh Circuit defending the appealability of the Final Judgment without a Rule 54(b) certification. If that is the Board's position, then it is wrong. The Final Judgment is in fact an immediately appealable order, notwithstanding the Court's retention of jurisdiction until the state pension fund vesting issue is resolved by future, as yet-unknowable events.

The reason the Final Judgment is an appealable order is set forth in *Parks v. Pavkovic*, 753 F.2d 1397 (7th Cir. 1985), where the Seventh Circuit concluded that an "order directing the state to reimburse (in an as yet undetermined amount) the parents of the class members" was properly before that court, *not* because of a Rule 54(b) certification (*id.* at 1402 (the court's conclusion regarding appealability "owes nothing to Rule 54(b)")), but instead because "nothing remains pending in the district court except calculating the actual amount owed each class member." *Id.* The calculation, the court said, was "not the resolution of a separate claim but merely the disbursement stage following what [the court] . . . determined to have been the final judgment on damages." *Id.* The Seventh Circuit explained its reasoning more fully as follows:

> Normally an order that merely decides liability and leaves the determination of damages to future proceedings does not finally dispose of any claim; it is just a preliminary ruling on the plaintiff's damage claim. But if the determination of damages will be mechanical and uncontroversial, so that the issues the defendant wants to appeal before that determination is made are very unlikely to be mooted or altered by it—in legal jargon, if only a "ministerial" task remains for the district court to perform—then immediate appeal is allowed. For if the further proceedings in the trial court are quite unlikely to make the appeal moot or even affect the issues on appeal, there is no reason to delay the appeal while they are resolved; and the delay may be a source of cost.

*Id.* at 1401-02 (citations omitted). While noting that "[t]he line between the ministerial and the substantial is a very dim one," the Seventh Circuit held that the order at issue in that case fell on the ministerial side because "all that remains to be done in the district court is for the members of the class to submit receipts or other evidence showing what they have paid or still owe the institutions; and the district judge made clear that the defendant agencies would be jointly and severally liable to the class members for whatever amounts are shown to be due." *Id.* at 1402. The court explained why this satisfied the ministerial test:

> Although computing the money owed each class member is not automatic, it is mechanical, is unlikely to engender dispute or controversy, and will require no analytic or judgmental determinations that might affect the questions now before us or give rise to other appealable questions . . . . But at the same time, the processing of the individual class members' claims will not be costless, so that if this appeal is allowed and the state persuades us that no damages should be awarded, an expensive computation involving thousands of bills will be avoided. If the district court's order is upheld, still nothing will have been lost by the appeal. For in the unlikely event that any appealable issues arise in computing each class member's damage entitlement, they will not be factually

7

> similar to those raised by the present appeal, so there will be no judicial diseconomy if they are considered in a separate appeal.

*Id.; see also McMunn v. Hertz Equip. Rental Corp.*, 791 F.2d 88, 90-91 (7th Cir. 1986) (holding that entry of judgment against third-party indemnitor was immediately appealable under ministerial exception notwithstanding that adjudication of the main claim that would determine the amount, if any, to be indemnified, had not yet occurred).

The rationale for the exception applied in *Parks* is even greater in this case. In *Parks,* computing the amount of each reimbursement owed to the parents was "not automatic," although it was "mechanical," "unlikely to engender dispute or controversy," and would "require no analytic or judgmental determinations that might affect the questions" on appeal. *Parks,* 753 F.2d at 1402. Here, computing the additional amount of lost pension benefits to which Ortega would be entitled is automatic. As the Court indicated earlier in this opinion and the amended Final Judgment will reflect, should Ortega's state pension not vest, the additional amount Ortega can recover is $299,184. *See McMunn,* 791 F.2d at 90 ("The relevance of a second appeal's being unlikely is that the main reason for forbidding interlocutory appeals is to prevent the same case from generating more than one appeal. An order to indemnify fits the exception because the amount to be indemnified will be determined *automatically* by the judgment on the main claim.") (emphasis added).

In addition, the other factors discussed by the *Parks* court are satisfied here as well. *First,* the retention of jurisdiction will not "affect the issues on appeal." *Parks,* 753 F.2d at 1402. Inasmuch as the Final Judgment ruled in favor of the

8

Board on the question of whether the amount of Ortega's lost pension benefits should be offset by her state pension benefits, that question will only be before the appellate court if Ortega were to file a cross-appeal. Thus, the issue of an off-set for state pension benefits will either be decided in the present appeal (if Ortega files a cross-appeal[1]) or foreclosed for any future appeal (if she does not). Regardless of whether Ortega files a cross-appeal on that issue, further proceedings in this Court on the state pension issue after the appellate court's ruling will not lead to further appeals. At most, a ruling in favor of Ortega on the off-set issue would lead to entry of judgment in favor of Ortega for the full amount of her lost pension benefits, and the need for this Court to retain jurisdiction will be short-circuited. If Ortega does not file an immediate cross-appeal, it is possible (though unlikely) that an appealable issue might be raised once the contingency of pension vesting ripens. In that event, the appealable issue "will not be factually similar to those raised by the present appeal, so there will be no judicial diseconomy if they are considered in a separate appeal." *Id.*

*Second,* the Court's retention of jurisdiction has no potential to moot the Board's appeal. *See McMunn*, 791 F.2d at 90 ("[T]he word 'final' is not self-defining; its meaning depends on practical considerations such as that the federal courts of appeals do not have time to decide appeals that may become moot because the order sought to be appealed is conditional on an event that may never come to pass. A

---

[1] The filing deadline for a cross-appeal from the Final Judgment was fourteen days after December 13, 2017 (the date on which the Board filed its notice of appeal), or December 27, 2017. *See* Fed. R. App. P. 4(a)(3). The record does not reflect that Ortega filed a notice of appeal within that time.

contingent judgment is not final till the contingency materializes."). The contingency at issue in the Court's Final Judgment relates to additional, not yet awarded, damages; it does not affect any ruling from which the Board seeks an appeal.

Moreover, in *McMunn*, the Seventh Circuit rejected a mootness objection to allowing an immediate appeal of the district court's order granting a third-party claim prior to a determination of liability on the indemnitee for which the third-party might be responsible under the district court's order. It found instead that the appeal was "saved" despite the mootness objection:

> by the fact that the judgment granting the third-party claim is only partially contingent on the success of the main claim and will therefore not be moot even if the main claim is dismissed. For the indemnity clause not only requires Eichleay to make good any damages that McMunn may collect from Hertz; it requires Eichleay to pay Hertz the expenses of defending against McMunn's suit. Those expenses will be incurred—some of them have been incurred already—whether or not McMunn wins his suit. It is true that if he loses after Hertz has incurred only modest expenses in defense, the amount that Hertz can realize on the judgment on its third-party complaint may be so small that Eichleay may not consider the judgment worth appealing. In this sense an element of contingency pervades the entire appeal even though the judgment imposes an unconditional obligation on Eichleay. . . . .
>
> Nevertheless the unconditional element prevents us from dismissing the appeal. . . . [A] judgment that is only partially contingent should be held to be . . . appealable to us as a matter of right . . . .

*Id.* at 91.

Like the judgment at issue in *Munn,* the Final Judgment here is at most only partially contingent, for regardless of the outcome on the state pension vesting

10

issue, the Board is liable under the Final Judgment for at least $216,716 in lost pension benefits. In the Seventh Circuit own words, this "unconditional element prevents" that court from dismissing the Board's appeal.[2]

A final issue that needs to be addressed concerns the dismissal "without prejudice" aspect of the Court's Final Judgment. Both in the Equitable Relief Order and in the Final Judgment Order, the Court specified that the case was dismissed without prejudice with retention of jurisdiction through August 1, 2021, and that if, by that date, no motion had been filed by Ortega seeking additional lost pension benefits, the dismissal without prejudice would be replaced with a dismissal *with prejudice*.

In *Lynch, Inc. v. Samatason Inc.*, 279 F.3d 487 (7th Cir. 2002), the district court judge "ordered the litigation dismissed with prejudice but stated in the order that he was retaining jurisdiction to enforce the settlement agreement." *Id.* at 489.

---

[2] The Board's voluntary dismissal of its notice of appeal under the belief that the appellate court lacked jurisdiction over the appeal raises the question of whether a second notice of appeal would be untimely if the Board turns out to be incorrect over the appellate court's lack of jurisdiction over the first notice of appeal. Federal Rule of Appellate Procedure 4(a)(1)(A) requires that the notice of appeal be filed within 30 days after entry of the judgment or order appealed from. The Final Judgment was entered on November 21, 2017. So if that Judgment was indeed appealable, the notice of appeal was due December 21, 2017. The Board filed within that deadline but then voluntarily dismissed that timely filed notice of appeal. The Court's entry herewith of an amended Final Judgment pursuant to the terms set forth in this opinion may or may not start the clock running again. To the extent that it does not, however, Federal Rule of Appellate Procedure 4(a)(5) allows the district court to extend the time to file a notice of appeal if the party so moves no later than 30 days after the time prescribed in Rule 4(a)(1)(3) expires and that party shows excusable neglect or good cause. If the Board must rely on Rule 4(a)(1)(3) to file a timely second notice of appeal, then it would have to file a motion for extension of time on or before January 20, 2018 and establish in that motion excusable neglect or good cause within the meaning of that rule.

11

The Seventh Circuit held that the district court's "purported retention" of jurisdiction "had no significance" unless jurisdiction "is retained (meaning that the suit has *not* been dismissed with prejudice." *Id.* (emphasis in original). Hence, the Court's dismissal without prejudice in the Final Judgment was necessary in order for the Court to retain jurisdiction to award further damages if it became proper to do so after the state pension vesting date.

But in *Shapo v. Engle,* 463 F.3d 641 (7th Cir. 2006), the Seventh Circuit posed the question of "what a judge should do who wants to enter a final judgment in order to preclude further litigation of the same claim between the same parties, by operation of the doctrine of res judicata, but to retain jurisdiction over some incidental matter that may take years to resolve." *Id.* at 646.[3] The court stated that "the district court should state that judgment is being entered in order to allow the parties to enforce it and that the 'without prejudice' language shall not allow them to reopen issues resolved by the judgment." *Id.*

The Court will amend the Final Judgment to add the additional language suggested by the *Shapo* opinion. In addition the Final Judgment will be amended to specify the amount of additional damages to which Ortega will become entitled if her state pension does not vest ($299,184).

### B.  RULE 60(h)

Under Rule 62(d), the Board may obtain a stay of enforcement of the judgment appealed from if it posts a bond:

---

[3] The issue was raised in the context of a settlement agreement, and hence the question of immediate appealabilty of such an order was not before the Court.

> (d) Stay with Bond on Appeal. If an appeal is taken, the appellant may obtain a stay by supersedeas bond, except in an action [not relevant here] . . . . The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. The stay takes effect when the court approves the bond.

The Board seeks an order waiving the requirement of a bond in order to stay enforcement of the Final Judgment pending appeal. The Board cites Rule 62(h) as authority for waiving of the bond requirement. That rule provides that:

> (h) Stay with Multiple Claims or Parties. A court may stay the enforcement of a final judgment entered under Rule 54(b) until it enters a later judgment or judgments, and may prescribe terms necessary to secure the benefit of the stayed judgment for the party in whose favor it was entered.

Rule 62(h) by its terms applies to the stay of a judgment rendered appealable by Rule 54(b). Because the Court has found that Rule 54(b) does not provide a basis for appealing any portion of the Final Judgment, Rule 62(h) does not apply.

The Board has not cited any other authority on which a waiver of the bond requirement of Rule 62(d) could be based. Nevertheless, "the law in this area is clear." *Dillon v. City of Chicago*, 866 F.2d 902, 905 (7th Cir. 1988). In the alternative to obtaining an automatic stay of execution of judgment pending appeal by posting a bond pursuant to Rule 62(d),

> the appellant may move that the district court employ its discretion to waive the bond requirement. When determining whether to waive the posting of bond, the district court may look to several criteria enumerated by this court: (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether "the defendant's ability to pay

13

the judgment is so plain that the cost of a bond would be a waste of money"; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Id.* at 904-05 (citations omitted); *see also N. Ind. Public Serv. v. Carbon Cnty. Coal*, 799 F.2d 265 (7th Cir. 1986) (waiving the requirement of bond pending appeal where the appellant was a solvent public utility, with net worth well in excess of the judgment); *Lightfoot v. Walker*, 797 F.2d 505 (7th Cir. 1986) (establishing guidelines for determination of when waiver of bond is appropriate, and denying waiver in that case because "procedure for collecting a judgment against the State [of Illinois] is not only cumbersome and time consuming, but uncertain in outcome, since the judgment cannot be paid unless and until the State legislature votes to appropriate the money necessary to pay it"); *Olympia Equip. v. W. Union Tele. Co.*, 786 F.2d 794 (7th Cir. 1986) (modifying and affirming the district court's alternative security to posting a supersedeas bond).

Although the Board has provided the Court with a sworn declaration stating that the Board is able to pay the Final Judgment even if it increases to as much as $2,000,000, *see* R. 207-3, ability to pay, standing alone, is not the only consideration for the Court's exercise of discretion to waive the bond requirement. As the Board has not offered any argument or legal authority as to any of the other factors discussed in the above cited case law, the Board's request is denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Final Judgment Under Rule 54(b) and Motion to Stay Judgment Under Rule 62, R. 207, is denied. Further,

14

an Amended Final Judgment along the lines discussed herein shall be entered in the case.

*Thomas M. Durkin*
Thomas M. Durkin
United States District Judge

Dated: January 3, 2018